2020 FEB 25 PM 3 09

RECEIVED
US COURT OF APPEALS
FIRST CIRCUIT
CLERK'S OFFICE

## Case No. 19-2005

# UNITED STATES COURT OF APPEAL
# FOR THE FIRST CIRCUIT

STUDENTS FOR FAIR ADMISSIONS, INC.
Plaintiff-Appellant

v.

PRESIDENT AND FELLOWS OF HARVARD COLLEGE
Defendant-Appellee

_____

On Appeal from the United States District Court
For The District Of Massachusetts

# BRIEF FOR Jun Xiao, Yong Li, Xiaoying Yu, and Haiying Li
# AS PRO SE AMICI CURIAE
# IN SUPPORT OF PLAINTIFFS-APPELLANTS

Jun Xiao, PahrmD, Ph.D. (pro se)
231 North Ave.
Battle Creek, MI 49017
Tel:  248-568-6037
E-mail:  jxccny@yahoo.com

Yong Li, Software Developer (pro se)
32 Willow Road
Sudbury MA 01776
Tel: (978) 579 9918
yong01776@gmail.com

Xiaoying Yu, Epidemiologist (pro se)
555 Kirkcaldy Way,
Abingdon MD 21009
xyu002@gmail.com

Haiying Li, CPA (pro se)
11300 Rockville Pike, #800,
Rockville, MD 20852
hli@skmb-cpa.com

Case No. 19-2005

# UNITED STATES COURT OF APPEAL
# FOR THE FIRST CIRCUIT

STUDENTS FOR FAIR ADMISSIONS, INC.
Plaintiff-Appellant

v.

PRESIDENT AND FELLOWS OF HARVARD COLLEGE
Defendant-Appellee

On Appeal from the United States District Court
For The District Of Massachusetts

# BRIEF FOR Jun Xiao, Yong Li, Xiaoying Yu, and Haiying Li
# AS PRO SE AMICI CURIAE
# IN SUPPORT OF PLAINTIFFS-APPELLANTS

Jun Xiao, PahrmD, Ph.D. (pro se)
231 North Ave.
Battle Creek, MI 49017
Tel:  248-568-6037
E-mail:  jxccny@yahoo.com

Yong Li, Software Developer (pro se)
32 Willow Road
Sudbury MA 01776
Tel: (978) 579 9918
yong01776@gmail.com

Xiaoying Yu, Epidemiologist (pro se)
555 Kirkcaldy Way,
Abingdon MD 21009
xyu002@gmail.com

Haiying Li, CPA (pro se)
11300 Rockville Pike, #800,
Rockville, MD 20852
hli@skmb-cpa.com

# TABLE OF CONTENTS

INTEREST OF AMICI CURIAE                                                                    2

SUMMARY OF ARGUMENT                                                                         2

ARGUMENT                                                                                    3

I.    District Judge Erred When She Ruled "Asian Americans … Did Not Possess the
Personal Qualities that Harvard Is Looking for …"                                           3

II.   District Judge Made a False Statement of Fact When She Wrote "Teacher and
Guidance counselor Recommendation Seemingly Presented Asian Americans as Having
Less Favorable Personal Characteristics …"                                                  6

III.  District Judge Erred When She Ruled "Harvard's Admissions of Officers Are Not
Responsible for Any Race-Related or Race-Correlated Impact That Those Letters May
Have."                                                                                      8

IV.   The Amici Supports Affirmative Action. However, The Amici Disagrees to Sacrifice
Asian Americans in Order to Satisfy Affirmative Action.                                    10

V.    Harvard's Unfairness Would Negatively Affect Those Students Who Seemingly Are
"Benefit" from Harvard's Unfair Admission System.                                          11

CONCLUSION                                                                                  13

CERTIFICATE OF COMPLIANCE                                                                   14

CERTIFICATE OF SERVICE                                                                      15

# CASES, STATUES AND RULES

Affirmative Action .................................................................................................... 2, 10

Ho v. San Francisco Unified Sch. Dist. ...................................................................... 3

Schuette v. Coalition to Defend Affirmative Action, ___ U.S. ___, 134 S.Ct. 1623, 188 L.Ed.2d
613, 82 U.S.L.W. 4251 (U.S. 04/22/2014) ................................................................. 5

Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc., ___ U.S. ___, 135 S.Ct.
2507, 192 L.Ed.2d 514, 83 U.S.L.W. 4555 (U.S. 06/25/2015) .................................... 8

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. ........................... 13

## INTEREST OF AMICI CURIAE

Pro se Jun Xiao, PahrmD, Ph.D., Yong Li, Software Developer ,

Xiaoying Yu, PahrmD, Ph.D. and Haiying Li, CPA ("The Amici") are U.S.

citizens or residents. They are all from Asian American families. The Amici

experienced, or their kids are in experience or going to apply to colleges or

universities. They support Affirmative Action.  However, they disagree that to

sacrifice a specific group, for example, Asian American students, to satisfy the

Affirmative Action. The Amici, in its brief, discusses the likely consequence

on Asian students from the unfair admission system by Harvard University.

The brief also discusses how the unfairness would negatively affect those

students who seems are "benefit" off the current admission system.


## SUMMARY OF ARGUMENT

District Judge Allison Burroughs erred when she made two rulings with

respect to the fact that Harvard uses de facto racial quotas to discriminate against

Asian students and maintains this discriminatory quota by giving Asian students a

lower "personal rate" to balance these students' higher criteria of admission. The

first ruling is "*Asian Americans ... Did Not Possess the Personal Qualities that*

Harvard Is Looking for ..."; the second ruling is "Teacher and Guidance counselor Recommendation Seemingly Presented Asian Americans as Having Less *Favorable Personal Characteristics* ..." (See *Judge's* Finding of Fact and Conclusion of Law dated 9/30/2019) Judge Burroughs' decision picked up one-sided story and false information, unfairly adapted Harvard's discrimination against Asians, and that fully exposed the judge's prejudice. The discrimination against Asians in college admissions has caused a serious of harm and burden to Asian American communities, families, and students. Today, Harvard's admission against Asians continuous the traditionally negative stereotypes against Asian society. The case <u>Ho v. San Francisco Unified Sch. Dist.</u> , and a current action against racial discrimination in California as well as throughout the United States, demonstrate that our fight against race discrimination is an ongoing and far-reaching. Today, Harvard's implicit discrimination is intolerable in American society, and Harvard should stop such conduct immediately.

## ARGUMENT

### I. District Judge Erred When She Ruled "Asian Americans ... Did Not Possess the Personal Qualities that Harvard Is Looking for ..."

The reason that it is harder for Asian Americans to get into Harvard is that their "personal ratings" (a subjective evaluation of personal

qualities) are, on average, significantly lower than for white applicants. The District Court Judge Allison D. Burroughs adopted it as an undisputed fact:

> "*the Court therefore concludes that the data demonstrates a statistically significant and negative relationship between Asian American identity and the personal rating assigned by Harvard admissions officers, holding constant any reasonable set of observable characteristics.*"
>
> (*Judge's* Finding of Fact and Conclusion of Law dated 9/30/2019)

This leaves the question of why Asian American applicants were being deemed to have, on average, poorer personal qualities than white applicants.

However, Judge Burroughs held that the plaintiffs could not prove that the lower personal ratings are the result of "animus" or ill-motivated racial hostility towards Asian Americans by Harvard admissions officials.

The Judge Burroughs made two explanations. First, in her Findings of fact and Conclusion of Law, she wrote that:

4

*"It is possible that the self-selected group of Asian Americans that applied to Harvard during the years included in the data set used in this case did not possess the personal qualities that Harvard is looking for at the same rate as white applicants . . ."*

*(Judge's* Finding of Fact and Conclusion of Law dated 9/30/2019)

It is disappointing that Judge Burroughs would indulge in that sort of conjecture. Surely the burden should be on Harvard to prove that its lower evaluation of the personal characteristics of Asian Americans is *not* the result of racial bias rather than vice versa. The court must be aware of various stereotypes of Asian Americans as "grinds" and math geeks who lack personality. The burden should be on Harvard to prove that such stereotypes are not at play here.

See Schuette v. Coalition to Defend Affirmative Action, ___ U.S. ___, 134 S.Ct. 1623, 188 L.Ed.2d 613, 82 U.S.L.W. 4251 (U.S. 04/22/2014),   "No good can come" from these inquiries, JUSTICE SCALIA responds, because they divide the Nation along racial lines and perpetuate racial stereotypes. Ante, at 1643 - 1644, 188 L.Ed.2d, at 635. The plurality shares that view; it tells us that we must not assume all individuals of the same race think alike. See ante, at 1644 - 1645, 188 L.Ed.2d, at

5

625-626. The same could have been said about desegregation: Not all members of a racial minority in Seattle necessarily regarded the integration of public schools as good policy. Yet the Seattle Court had little difficulty saying that school integration as a general matter "inure[d] .. to the benefit of" the minority. 458 U.S., at 472, 102 S.Ct. 3187, 73 L.Ed.2d 896.

The judge wrote that the racial gap between the evaluation of Asian Americans and whites was small, but they are statistically significant. By definition, that means that it is very unlikely the gap is the result of chance. The court should be demanding that Harvard explain the gap or change their approach. Asian Americans cannot be expected to prove that they have personalities that are as admirable as whites. Given the racial gap, Harvard should have to prove that its evaluation system is fair.

## II. District Judge Made a False Statement of Fact When She Wrote "Teacher and Guidance counselor Recommendation Seemingly Presented Asian Americans as Having Less Favorable Personal Characteristics …"

Judge Burroughs' second explanation for the racial "personal rating" gap is that there is racial bias in the evaluations by teachers and counselors. Judge Burroughs' Findings of Fact and Conclusion of Law wrote:

6

*"teacher and guidance counselor recommendations seemingly presented Asian Americans as having less favorable personal characteristics than similarly situated non-Asian American applicants . . . Because teacher and guidance counselor recommendation letters are among the most significant inputs for the personal rating, the apparent race-related or race-correlated difference in the strength of guidance counselor and teacher recommendations is significant."*

*(Judge's* Finding of Fact and Conclusion of Law dated 9/30/2019)

This is conflicting with Judge Burroughs' own finding of fact. In the Memorandum and Order on Cross-Motions for Summary Judgment, Judge Burroughs wrote:

In a second report completed in 2013, the OIR found that non-legacy, non-*athlete ("NLNA") Asian American applicants performed significantly better* than NLNA White applicants in SAT scores, the alumni overall rating, and the academic rating, as well as slightly better than NLNA White applicants

in the extracurricular rating, and the same as NLNA White applicants in the alumni personal rating, the guidance counselor rating, and teacher ratings.

*(Judge's Memorandum and Order* dated 9/28/2019)

There is no facts in the case in hand show that those recommendation letters are less favorable towards Asian Americans.

See <u>Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.,</u> __ U.S. __, 135 S.Ct. 2507, 192 L.Ed.2d 514, 83 U.S.L.W. 4555 (U.S. 06/25/2015) , the text of the FHA simply cannot be twisted to authorize disparate-impact claims. It is hard to imagine how Congress could have more clearly stated that the FHA prohibits only intentional discrimination than by forbidding acts done " because of race, color, religion, sex, familial status, or national origin."

## III. District Judge Erred When She Ruled "Harvard's Admissions of Officers Are Not Responsible for Any Race-Related or Race-Correlated Impact That Those Letters May Have."

Based on Judge Burroughs' false statement that those recommendation letters are less favorable to Asian Americans, the further ruling is negligent and looking like to accept such discrimination action against Asian American applicants. Nonetheless, Judge Burroughs ruled in favor of Harvard because she reasoned that:

> "*Harvard's admissions officers are not responsible for any race-related or race-correlated impact that those letters may have.*"

> (*Judge's* Finding of Fact and conclusion of Law dated 9/30/2019)

Judge Burroughs should have ruled the other way here due to the contrary facts and conclusion. On one hand, if Harvard is knowingly using instruments that are racially biased (the counselor and teacher recommendations) and does not compensate for that bias, then Harvard's process is biased. On the other hand, if Harvard claimed that they did not previously know that the letters were biased, Harvard knows it now.

It may be hard for Harvard to rely on objective tests like the SAT because it is often accused of using an instrument that is biased against African Americans. When it uses a subjective tool such as counselor and

teacher letters, it must now contend with the fact that they are biased against Asian Americans. So the Harvard admissions officers are hardly a group to be blamed anyway. But Judge Burroughs is wrong to suggest that Harvard can take a "not our fault" approach to demonstrable anti-Asian American bias in the letters that it relies upon. Difficult though it may be, Harvard should do better.

## IV. The Amici Supports Affirmative Action. However, The Amici Disagrees to Sacrifice Asian Americans in Order to Satisfy Affirmative Action.

The Amici supports Affirmative Action. However, they disagrees that to sacrifice a specific group, for example Asian students, to satisfy the Affirmative Action.

Harvard can say that although Asian Americans are excellent, the positions are limited, so that Harvard cannot recruit so many Asian American Students. However, in order to let many Asian applications fail, Harvard deliberately suppressed personal ratings. This was not only discriminating against Asian Americans, but also slandering and labeling Asian Americans, meaning that Asian Americans did not have the qualities that Harvard admissions seek. What's more,

the District Court Judge made the same decision, which is to legalize the slander. This is to use the judicial system to further slander Asian Americans. Would the judge like to label other ethnic groups, for example, African Americans or Hispanic Americans, in this way?

Asian Americans have been under disadvantages in every respect, and they are under pressure from negative stereotypes about schooling, employment, and marriage; for the sake of justice, dignity and equality are more important than percentages, these institutions should not be aware and avoid to define Asian American as a race with negative personality or personal qualities; The Judgment of District Court itself could be also an objection to widespread discrimination against Asian-Americans.

## V. Harvard's Unfairness Would Negatively Affect Those Students Who Seemingly Are "Benefit" from Harvard's Unfair Admission System.

Harvard's action attempted to limit the number of Asian American students to get into Harvard. This unfairness would negatively affect those students who seems are "benefit" off the current admission system

11

Students who with low criteria were selected to enter prestigious schools are facing huge academic pressure. They are often at the bottom of a class, and often need to take second time to pass exams. Teachers are required to take special care of them. They may spend more time to finish scheduled school course.

Even after graduated, it depends on what careers they are engaged in. Such as medical doctors, especially those specialists, could meet quite different circumstance. In recent years in New York, there are already over-numbered outpatients who are looking for local Asian American doctors. People prefer to look for Dr. Li, Dr. Wang, Dr. Gadhvi, Dr. Nguyen, etc. It is understandable. No one wants to see a doctor if his/her grade in Harvard is much lower than others?

Even if those elite students of other ethnic groups entered Harvard by grade could be affected, because they can be suspected of lacking ability due to racial quotas.

# CONCLUSION

WHEREFORE, The dismissal of the Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.  claim against Plaintiff-Appellant is deeply troubling to amici, who join Appellant in urging the Court to vacate the district court's decision.


Date: February 25, 2020                    Respectfully submitted,


/s/ Jun Xiao                               /s/ Yong Li

Jun Xiao, PahrmD, Ph.D. (pro se)           Yong Li, Software Developer (pro se)
231 North Ave.                             32 Willow Road
Battle Creek, MI 49017                     Sudbury MA 01776
Tel:  248-568-6037                         Tel: (978) 579 9918
E-mail:  jxccny@yahoo.com                  yong01776@gmail.com


/s/ Xiaoying Yu                            /s/ Haiying Li

Xiaoying Yu, Epidemiologist (pro se)       Haiying Li,  CPA  (pro se)
555 Kirkcaldy Way,                         11300 Rockville Pike, #800,
Abingdon MD 21009                          Rockville, MD 20852
xyu002@gmail.com                           hli@skmb-cpa.com


13

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2524 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

/s/ Yong Li,
Yong Li,
pro se amicus

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Yong Li,
Yong Li,
pro se amicus